UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Moxie Venture L.L.C., *et al.*,

                         Plaintiffs,        Civ. No. 15-3704 (RHK/JJK)
                                                 **MEMORANDUM OPINION**
                                                 **AND ORDER**

v.

The UPS Store, Inc.,

                         Defendant.

---

J. Michael Dady, Keith A. Marnholtz, Dady & Garner, P.A., Minneapolis, Minnesota, for Plaintiffs.

Mark R. McDonald, Morrison & Foerster LLP, Los Angeles, California, Kevin T. Kwon, Morrison & Foerster LLP, San Diego, California, James M. Susag, Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, Minnesota, for Defendant.

---

### INTRODUCTION

This action arises out of an agreement between Plaintiff Moxie Venture L.L.C. ("Moxie")[1] and Defendant The UPS Store, Inc. ("TUPSS"), granting Moxie the exclusive right to own and operate a UPS Store franchise in Bloomington, Minnesota. Moxie alleges *inter alia* that TUPSS fraudulently induced it to enter into the agreement; it seeks rescission and damages. TUPSS now moves to dismiss and to transfer venue. For the reasons that follow, its Motion will be granted.

---

[1] Also named as Plaintiffs are Moxie's two members, Melinda and Anton Vincent. The Vincents and Moxie collectively are referred to herein as "Moxie."

## BACKGROUND

TUPSS franchises UPS Stores that provide retail shipping, postal, printing, and business services. (Compl. Ex. 1 at 5.)[2] In 2013, Moxie entered into the Franchise Agreement with TUPSS to operate a UPS Store franchise in Bloomington, Minnesota. (Compl. ¶ 4; FA at 5, 60.) The Vincents personally guaranteed Moxie's obligations under the Franchise Agreement. (Compl. ¶¶ 5-6.)

In a section entitled "**RISK FACTORS ASSOCIATED WITH THE PURCHASE OF A THE UPS STORE® FRANCHISE**," the Franchise Agreement provided:

> **6. NO REPRESENTATIONS OF EARNINGS OR PROFITS**
>
> YOU UNDERSTAND AND ACKNOWLEDGE THAT NEITHER TUPSS, NOR ANY OF ITS OFFICERS, AGENTS, EMPLOYEES OR REPRESENTATIVES, NOR ANY TUPSS AREA FRANCHISEE, HAS MADE ANY CLAIMS OR REPRESENTATIONS WHATSOEVER REGARDING POTENTIAL REVENUES, EARNINGS, OR PROFITS THAT YOU MAY ACHIEVE AS THE OWNER OF A THE UPS STORE FRANCHISE, AND THAT YOU HAVE NOT MADE A DECISION TO PURCHASE YOUR FRANCHISE BASED ON ANY SUCH REPRESENTATIONS.

(FA at 110, 112.) The Agreement further provided, in a section entitled "**Establishment of a New Business**":

> YOU UNDERSTAND THAT THE CREATION AND OPERATION OF A NEW BUSINESS INVOLVE A NUMBER OF RISKS, WHICH MEANS THAT IF YOU ARE NEVER ABLE TO OPERATE THE BUSINESS PROFITABLY, YOU COULD LOSE PART OR ALL OF YOUR INVESTMENT, PLUS ANY ADDITIONAL FUNDS THAT YOU

---

[2] The Franchise Agreement (FA) is attached to the Complaint as Exhibit 1 and is, therefore, properly considered on a Motion to Dismiss. See Fed. R. Civ. P. 10(c); Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006).

> CONTRIBUTE TO THE BUSINESS. YOU UNDERSTAND AND ACKNOWLEDGE THAT TUPSS CANNOT GUARANTEE THAT YOUR BUSINESS WILL EVER ACHIEVE PROFITABILITY, AND BY YOUR SIGNATURE ON THIS DOCUMENT YOU ARE AGREEING TO PURCHASE A THE UPS STORE FRANCHISE WITH FULL KNOWLEDGE OF THE RISKS DESCRIBED HEREIN.

(Id. at 110.) With regard to the location for Moxie's UPS Store, the Agreement provided that the "ultimate decision and final responsibility on whether to accept the [proposed] site and the lease" was Moxie's. (Id.) Finally, the Franchise Agreement provided that it constituted the entire agreement between the parties and that San Diego, California, was the "exclusive" venue for disputes arising thereunder. (Id. at 48, 50.)

Moxie alleges that its UPS Store has not performed as promised since opening in August 2013 and has "never reached the break-even point, let alone made a profit." (Compl. ¶ 47.) In September 2015, it commenced this action against TUPSS, alleging TUPSS made numerous misrepresentations regarding, among other things, the best location for Moxie's UPS Store and the franchise's anticipated revenue, cash flow, and operating profits, in order to induce Moxie to enter into the Franchise Agreement. (Id. ¶¶ 23-42.) It alleges a claim for violation of the Minnesota Franchise Act ("MFA"), Minn. Stat. § 80C.01 et seq. (Count I), as well as common-law claims for fraud (Count II), negligent misrepresentation (Count III), and breach of contract and the implied covenant of good faith and fair dealing (Count IV). It seeks rescission of the Franchise Agreement and damages in an amount to be determined at trial.

TUPSS now moves to dismiss the MFA claim and transfer the remaining claims. The Motion has been fully briefed and is ripe for disposition.

## STANDARD OF REVIEW

A complaint will survive a motion to dismiss only if it includes "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555; accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, the party seeking relief must set forth sufficient facts to "nudge[] the[] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [party] has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). In reviewing a motion to dismiss, the Court "must accept a plaintiff's specific factual allegations as true but [need] not . . . accept . . . legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556).

## ANALYSIS

TUPSS moves, first, to dismiss Moxie's MFA claim under Federal Rule of Civil Procedure 12(b)(6) and, second, to transfer the remaining claims under the Franchise Agreement's forum-selection clause.[3] The Court finds TUPSS's Motion well-taken.

TUPSS argues the MFA claim fails because Moxie cannot demonstrate it reasonably relied upon any alleged misrepresentation by TUPSS. The Court agrees for

---

[3] As discussed in more detail below, the Franchise Agreement's California forum-selection clause generally governs the claims in this action, but the parties acknowledge it does not and cannot apply to the MFA claim due to the MFA's anti-waiver provision. See Minn. Stat. § 80C.21.

largely the same reasons stated in Ellering v. Sellstate Realty System Network, Inc., 801 F. Supp. 2d 834 (D. Minn. 2011) (Kyle, J.). There, as here, the plaintiffs alleged the defendant franchisor had made misrepresentations, in violation of the MFA, about the amount of future income that would be generated if the plaintiff entered into a franchise agreement. The agreement, however, expressly disclaimed any reliance on the defendant's representations about projected future income. Id. at 838 (plaintiffs "acknowledge that . . . [y]ou have not relied upon any guarantee, warranty, projection, forecast or earnings claim . . . in entering into this Agreement"). The undersigned dismissed the plaintiffs' MFA claim, concluding the disclaimer scuttled such a claim and any purported reliance on the franchisor's "misrepresentations." Id. at 844-45. The Court perceives no reason to reach a different result here. Simply put, the Franchise Agreement firmly establishes that even if TUPSS made misrepresentations in connection with the sale of Moxie's franchise, Moxie did not rely upon any of them and, if it did (contrary to the express terms of the Franchise Agreement), such reliance was unreasonable as a matter of law.

     Moxie argues that Ellering was wrongly decided, but the Court disagrees. In support of its argument, Moxie focuses on Randall v. Lady of America Franchise Corp., 532 F. Supp. 2d 1071 (D. Minn. 2007) (Schiltz, J.), but the undersigned discussed and declined to follow Randall when deciding Ellering. See 801 F. Supp. 2d at 845 & n.13. Nothing in Moxie's argument persuades the Court that it reached an incorrect result in Ellering – a result that has been consistently followed in this District. See, e.g., U-Bake Rochester, LLC v. Utecht, Civ. No. 12-1738, 2014 WL 223439, at *8 (D. Minn. Jan. 21,

2014) (Montgomery, J.); Moua v. Jani-King of Minn., Inc., 810 F. Supp. 2d 882, 891-92 (D. Minn. 2011) (Montgomery, J.); see also Commercial Prop. Invs. v. Quality Inns Int'l, Inc., 938 F.2d 870, 875-76 (8th Cir. 1991) (noting that in Minnesota, reliance may be decided as a matter of law when based on assertions "in plain contradiction of a contract" and that "a contract provision negat[es] a claim of fraud . . . where the provision explicitly states a fact completely antithetical to the claimed misrepresentations") (citation omitted); OmegaGenesis Corp. v. Mayo Foundation for Med. Educ. & Research, __ F. Supp. 3d __, 2015 WL 5559897, at *3 (D. Minn. Sept. 21, 2015) (Doty, J.) ("[A] plaintiff cannot rely on a defendant's representations when the plaintiff's reliance directly contradicts a provision of a contract."); Kieland v. Rocky Mountain Chocolate Factory, Inc., Civ. No. 05-150, 2006 WL 2990336, at *8 (D. Minn. Oct. 18, 2006) (Frank, J.) (pre-Ellering case rejecting MFA claim where contract disclaimed reliance).[4]

With Moxie's MFA claim dismissed, the only claims remaining in this case are common-law ones. In the Court's view, the Franchise Agreement's forum-selection

---

[4] Randall was based on the MFA's anti-waiver provision, Minn. Stat. § 80C.21, which invalidates a provision in a franchise agreement purporting to waive a franchisee's rights under the statute. Randall reasoned that because Section 80C.21 voids "anything in a contract that . . . has the effect of waiving compliance with a provision of the [MFA, and] [o]ne such provision . . . is [the MFA's] prohibition of material false statements," the disclaimers in Randall's franchise agreement were invalid as a matter of law and could not impact her MFA claim. 532 F. Supp. 2d at 1088. But the disclaimers in a franchise agreement waive (or have the effect of waiving) nothing; rather, they *disclaim* any reliance on the franchisor's so-called misrepresentations. In other words, by willingly agreeing to the disclaimers in a franchise agreement, a franchisee simply *acknowledges* the *fact* that it has not relied upon any alleged "misrepresentations" before entering into the agreement. These *factual* disclaimers are not implicated by the anti-waiver provision in the MFA and defeat any claim of reasonable reliance. See Ellering, 801 F. Supp. 2d at 845; see also Commercial Prop. Invs., 938 F.2d at 875-76 (rejecting reliance as a matter of law when based on assertions "in plain contradiction of a . . . contract provision [that] explicitly states a *fact* completely antithetical to the claimed misrepresentations") (emphasis added).

clause is fully applicable to those claims and should be enforced.  See, e.g., Lafayette Int'l, Inc. v. Take 5 Del. Bus. Trust, Civ. No. 01-1382, 2002 WL 171738, at *1 (D. Minn. Feb. 1, 2002) (Davis, J.) (transferring common-law claims based upon forum-selection clause in franchise agreement after MFA claim had been dismissed).  Indeed, the Supreme Court recently noted that forum-selection clauses should nearly always be enforced, as they are "bargained for by the parties, protect[] their legitimate expectations and further[] vital interests of the justice system."  Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex., __ U.S. __, 134 S. Ct. 568, 581 (2013) (citations omitted).

Moxie argues the forum-selection clause is invalid *in toto*, and not just as applied to the MFA claim, because it violates the MFA's anti-waiver provision.  As noted above, the MFA invalidates contract provisions that purport to waive a franchisee's rights under the statute.  Minn. Stat. § 80C.21.  But as Moxie correctly points out, the statute and the rules promulgated thereunder only invalidate clauses that "require a franchisee to waive his or her rights to any . . . forum . . . *provided for by the laws of the jurisdiction*."  (Mem. in Opp'n at 34-35 (quoting Minn. R. 2860.4400(J)).)  Moxie does not cite, and the Court is not aware of, any provision of Minnesota law requiring a *common-law* claim for fraud, breach of contract, or the like to be litigated in Minnesota – particularly where, as the parties acknowledge here, such claims are governed by *California* law (due to the Franchise Agreement's choice-of-law clause). (See Doc. No. 1-1 at 48 ("This Agreement . . . shall be governed and construed under and in accordance with the laws of the State of California."); Mem. in Opp'n at 24 (acknowledging California law applies to the common-law claims).)  Accordingly, the anti-waiver provision does not invalidate the

- 7 -

forum-selection clause as applied to Moxie's common-law claims, and those claims will be transferred to the Southern District of California.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that TUPSS's Motion to Dismiss (Doc. No. 9) is **GRANTED.** Moxie's MFA claim (Count I) is **DISMISSED WITH PREJUDICE**, and Moxie's remaining claims (Counts II through IV) are **TRANSFERRED** to the United States District Court for the Southern District of California. The Clerk of the Court is directed to take all steps necessary to effectuate this transfer in an expeditious fashion.

Dated: January 12, 2016         s/ Richard H. Kyle
                                RICHARD H. KYLE
                                United States District Judge